UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL SLOCUM,
    Plaintiff,

vs.

SGT. S. BEAR, et al.,
    Defendants.

Case No. 1:18-cv-423
Cole, J.
Litkovitz, M.J.

REPORT AND
RECOMMENDATION

Plaintiff Michael Slocum, a prisoner at the Southern Ohio Correctional Facility (SOCF), filed this pro se civil rights complaint under 42 U.S.C. § 1983 alleging that defendants Bear, Lewis, Crabtree, and Cooper, SOFC corrections officers, used excessive force against him in violation of his Eighth Amendment rights. Plaintiff also alleges that defendants engaged in retaliation in violation of his First Amendment rights and inappropriate supervision under the Ohio Administrative Code. This matter is before the Court on defendants' motion for summary judgment (Doc. 87), plaintiff's response in opposition (Doc. 98), and defendants' reply (Doc. 100), as well as plaintiff's cross-motion for summary judgment (Doc. 99), to which defendants did not respond. The Court recommends that defendants' motion be denied in part and granted in part and that plaintiff's motion be denied.

    I.    **Factual Background**

Plaintiff submitted declarations signed under penalty of perjury with his response to defendants' motion for summary judgment and his motion for summary judgment. (*See* Doc. 98 at PAGEID 525-530; Doc. 99 at PAGEID 571-74). According to plaintiff's version of events, he was assaulted by defendants at SOCF on October 27, 2017. At approximately 9:30 a.m., he went to defendant Bear's office for a disciplinary hearing on a rules infraction "ticket." (Pl.'s Decl., Doc. 98 at PAGEID 525). When he entered the office, five correctional staff were present, including defendants Bear, Crabtree, Cooper, Lewis, and an unidentified individual. (*Id.* at

PAGEID 526). The unidentified individual subsequently stepped out of the office and the four named defendants remained. (*Id.*).

Defendant Bear read plaintiff's ticket and asked plaintiff for his side of the story. (*Id.*). Defendant Bear became angry, called plaintiff a liar, and used a racial slur. (*Id.*). Plaintiff also asserts that defendant Bear stated, "I see [you] like to assault c/o[]s and we didn't welcome you with an ass whoopin (sic) yet." (*Id.*). Plaintiff then signed his ticket, despite being handcuffed from the back. (*Id.*). After plaintiff signed the ticket, defendant Bear punched him in his forehead and right eye. (*Id.*). Plaintiff alleges that defendants Crabtree, Cooper, and Lewis then began striking and punching the right side of his body between his shoulder and his waist. (*Id.* at PAGEID 526-27). Bear eventually told the other defendants to stop and told plaintiff to leave his office. (*Id.* at PAGEID 527).

Upon leaving the office, plaintiff asked officer Bashum for medical attention but was denied. (*Id.* at PAGEID 527). Plaintiff also asked the same of defendants Cooper and Crabtree, but they laughed at him and locked him in his cell. (*Id.*). Plaintiff eventually caught the attention of Captain Bell and Ms. Davis[1] and recounted the use of force. (*Id.* at PAGEID 527-28). A few hours later, Nurse James examined plaintiff. (*Id.* at PAGEID 528). The corresponding first medical report noted the alleged use of force against plaintiff but contained the following objective findings: "No discoloration, bruising, swelling, or deformity of [the plaintiff's] right side or elbow noted. Patient ambulatory with steady gait. Pleasant." Nurse James gave plaintiff Motrin upon his request. (First medical report, Doc. 87-2 at PAGEID 478).[2]

---

[1] Neither plaintiff nor defendants identify the title or position of Ms. Davis.
[2] Plaintiff incorporated several of defendants' exhibits as his own. Plaintiff's Exhibits 1-4 are four medical reports (previously submitted as Docs. 87-2-87-5) and plaintiff's Exhibits 6 and 7 are Institutional Inspector Mahlman's affidavit and report (previously submitted as Docs. 87-1 and 87-2). (*See* Doc. 98-1 at PAGEID 534). As his Exhibit 5, plaintiff proffers records documenting his 15-day stay in segregation, during which time he allegedly experienced the excessive use of force. (*See* Doc. 98-1 at PAGEID 543-44).

Plaintiff avers that he told Nurse James about the use of force but that she did not document his injuries in the first medical report. (Doc. 98 at PAGEID 528).

The next day, plaintiff woke up in pain with his entire right eye swollen shut and his forehead and body badly bruised. (*Id.*). For the next two days, plaintiff asked to receive medical care for his injuries but was denied. (*Id.*). On October 30, 2017, plaintiff was examined by Nurse Tipton, who recorded his injuries and referred him to Certified Nurse Practitioner (CNP) Conley.[3] (*Id.* at PAGEID 529). The second medical report corresponding to this examination by CNP Conley stated: "Edematous area below right eye, Right eye swollen halfway shut. . . . Right elbow with small amount edema above joint. No open area, discoloration or drainage. No deformity seen. No pain upon palpation. . . . Right lateral rib cage painful to touch. Area below arm pit to just above waist slightly discolored, some bruising noted. No deformity, slight edema. . . . ROM [range of motion] poor." (Second medical report, Doc. 87-3 at PAGEID 481).

The following day, CNP Conley examined plaintiff again (October 31, 2017). (Doc. 99 at PAGEID 574). The corresponding third medical report indicated: "Right Eye: no subconjunctival hemorrhage, slight periorbital edema noted with contusion surrounding upper and lower eyelid . . . . Right side: tenderness on chest wall, contusions present[,]" but otherwise noted no deformities. (Third medical report, Doc. 87-4 at PAGEID 484). Plaintiff was given Tylenol. (*Id.*). A fourth medical report, from an examination dated November 2, 2017, included plaintiff's report that his injuries were "gone now" and documented only a small bruise on the right side of his stomach. (Fourth medical report, Doc. 87-5 at PAGEID 487).

On November 13, 2017, plaintiff filed a grievance alleging an unreported use of force on October 27, 2017, and Institutional Inspector Mahlman of SOCF investigated his claims.

---

[3] The parties both refer to "Dr. Conley," but the underlying medical reports indicate that Mr. Conley is a CNP. (*See, e.g.,* Doc. 87-4 at PAGEID 483-44).

(Mahlman Aff., Doc. 87-1 at PAGEID 472). In her affidavit, Inspector Mahlman avers that security footage of defendant Bear's office showed plaintiff entered "with ease and uninjured," remained standing in defendant Bear's office for approximately five minutes, then exited the office "with ease and uninjured, as if nothing happened." (*Id*. at PAGEID 473). Inspector Mahlman's report indicated that the security footage failed to reveal that an unreported use of force occurred. (*Id*.). Inspector Mahlman also stated that the first medical report from October 27, 2017 did not corroborate an unreported use of force. (*Id*.). Inspector Mahlman concluded that "[p]laintiff's claim of an alleged unreported use of force lacked merit and did not warrant further investigation." (*Id*.).

## II.     **Summary Judgment Standard**

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A grant of summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Satterfield v. Tenn.*, 295 F.3d 611, 615 (6th Cir. 2002) (quoting Fed. R. Civ. P. 56). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Satterfield*, 295 F.3d at 615 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

4

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). However, "[f]acts that are not blatantly contradicted by [the evidence] remain entitled to an interpretation most favorable to the non-moving party." *Coble v. City of White House, Tenn.*, 634 F.3d 865, 870 (6th Cir. 2011). "In response to a properly supported summary judgment motion, the non-moving party 'is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Maston v. Montgomery Cnty. Jail Med. Staff Pers.*, 832 F. Supp. 2d 846, 849 (S.D. Ohio 2011) (quoting *Sixty Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)).

A fact is "material" if its resolution will affect the outcome of the lawsuit. *Beans v. City of Massillon*, No. 5:15-cv-1475, 2016 WL 7492503, at *5 (N.D. Ohio Dec. 30, 2016) (citing *Anderson*, 477 U.S. at 248), *aff'd,* 706 F. App'x 295 (6th Cir. 2017). The party who seeks summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 322. To make its

5

determination, the court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968).

Because plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings)). However, a party's status as a pro se litigant does not alter the party's duty on a summary judgment motion to support his factual assertions with admissible evidence. *Maston*, 832 F. Supp. 2d at 851-52 (citing *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010)).

### III. Defendants' Motion for Summary Judgment

#### A. Excessive Force

##### 1. Legal Standard

Plaintiff's Eighth Amendment claim is brought under 42 U.S.C. § 1983. To prevail on a § 1983 claim, plaintiff must demonstrate "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)).

A convicted prisoner's right to be free from the use of excessive force by prison officials is governed by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). An Eighth Amendment claim has both an objective and subjective component. *Cordell v. McKinney*, 759

F.3d 573, 580 (6th Cir. 2014) (citing *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013)). The subjective component focuses on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). *See also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). In making this inquiry, the Court should consider the need for the use of force, the relationship between that need and the type and amount of the force used, the threat reasonably perceived by the official, the extent of the injury inflicted, and any efforts made to temper the severity of a forceful response. *See Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 319-21. The inmate is not required to suffer a serious injury, but the extent of his injuries may be considered in determining whether the force used was wanton and unnecessary. *Wilkins*, 559 U.S. at 38-40; *Hudson*, 503 U.S. at 7.

The objective component requires the "pain inflicted to be 'sufficiently serious'" to offend "contemporary standards of decency." *Cordell*, 759 F.3d at 580 (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011); *Hudson*, 503 U.S. at 8). "While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." *Id.* at 580-81 (citing *Wilkins*, 559 U.S. at 37). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.* at 581 (quoting *Hudson*, 503 U.S. at 9).

### 2. Analysis

Defendants rely on Inspector Mahlman's investigation of plaintiff's allegation of an unreported use of force on October 27, 2017 (*see* Doc. 87-1) to support their position that there

are no genuine issues of material fact regarding plaintiff's excessive force claim. Inspector Mahlman reviewed the security footage from the time and location involved in plaintiff's allegations and found that plaintiff entered defendant Bear's office with ease and uninjured, remained standing in the office for approximately five minutes, and exited the office "with ease and uninjured, as if nothing happened." (*Id*. at PAGEID 473). Inspector Mahlman ultimately concluded that "[t]he security footage did not reveal an unreported use of force occurred." (*Id*.).

Plaintiff's responsive brief alleges that the security footage provided to him upon his discovery request was edited to skip over the use of force and then slowed down to account for the use of force that was "clearly removed from the footage." (Pl.'s Resp., Doc. 98 at PAGEID 523). Plaintiff's sworn declaration, however, does not address the integrity of the video footage relied upon by Inspector Mahlman. The speculative and unsworn assertions offered by plaintiff in his response brief to cast doubt on the accuracy of the security footage upon which Inspector Mahlman relied is not evidence that can be considered on summary judgment.

In reply, defendants urge the Court to view the facts "in the light depicted by the videotape." (Doc. 100 at PAGEID 582) (quoting *Scott*, 550 U.S. at 381). The security footage itself, however, is not before the Court,[4] and Inspector Mahlman's description of the security footage violates the best evidence rule and is hearsay. *See* Fed. R. Evid. 801, 802, and 1002. *See Hinson v. Bias*, 927 F.3d 1103, 1108 n.1 (11th Cir. 2019) (affidavit based solely on affiant's interpretation of surveillance footage not considered on summary judgment because it violated the best evidence rule and was inadmissible hearsay). Inspector Mahlman's affidavit is not

---

[4] Defendants do not state that the security footage is unavailable or otherwise discuss why it has not been proffered as evidence.

based on her personal knowledge of the alleged use of force incident but rather her recollection of the content of the security footage. The best evidence rule provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002. The purpose of the best evidence rule is to prevent fraud and encourage accuracy. *See Buruca v. D.C.*, 902 F. Supp. 2d 75, 83 (D. D.C. 2012) (quoting *United States v. Holton*, 116 F.3d 1536, 1545 (D.C. Cir. 1997)) ("[T]he rule is a mechanism to prevent fraud or mistransmission of information, *i.e.*, to ensure accuracy."). Defendants offer Inspector Mahlman's affidavit to prove the content of the security footage, i.e., that no use of force occurred. However, defendants have not offered this video footage into evidence. Inspector Mahlman's affidavit as it relates to the security footage invokes the concerns underlying the best evidence rule and cannot be considered on summary judgment. The Court declines to consider Inspector Mahlman's affidavit for purposes of summary judgment as it relates to the content of the security footage of the alleged use of force. Therefore, defendants have not presented evidence showing that plaintiff's version of events is a "visible fiction" such that "no reasonable jury could believe it. . . ." *Scott*, 550 U.S. at 380. *See also Coble*, 634 F.3d at 870 ("Facts that are not blatantly contradicted by [the evidence] remain entitled to an interpretation most favorable to the non-moving party.").

      Defendants also argue that the medical reports of record demonstrate that there is no genuine issue of material fact regarding whether plaintiff experienced an excessive use of force on October 27, 2017. Approximately two hours after the alleged use of force, plaintiff was sent for a medical examination by Nurse James, and the corresponding first medical report communicated the following objective findings: "No discoloration, bruising, swelling, or

9

deformity of right side or elbow noted. Patient ambulatory with steady gait." (Doc. 87-2 at PAGEID 478). The only treatment noted was Motrin, given upon plaintiff's request. (*Id*.). Plaintiff has averred, however, that Nurse James "did not document [his] injuries" on the date of the alleged use of force. (Doc. 98 at PAGEID 528).

In addition, plaintiff argues that the medical reports from the medical examinations occurring over the next several days present a genuine issue of material fact as to whether an excessive use of force occurred on October 27, 2017. On October 30, 2017, plaintiff was seen by Nurse Tipton and CNP Conley. (Doc. 87-3 at PAGEID 481). The second medical report corresponding to this examination quoted plaintiff as "[h]aving a lot of pain in [his] elbow and [his] face and [his] ribs *from an assault*" and noted that it "happened on *Friday 10-27*." (*Id.*) (emphasis added). The objective findings included: "Edematous area below right eye, Right eye swollen halfway shut. . . . Right elbow with small amount edema above joint. No open area, discoloration or drainage. No deformity seen. No pain upon palpation. . . . Right lateral rib cage painful to touch. Area below arm pit to just above waist slightly discolored, some bruising noted." (*Id*.). The relevant objective findings in the third medical report, which correspond to plaintiff's October 31, 2017 medical examination, included: "Right Eye: no subconjunctival hemorrhage, slight periorbital edema noted with contusion surrounding upper and lower eyelid . . . . Right side: tenderness on chest wall, contusions present." (Doc. 87-4 at PAGEID 484). The third medical report also noted that his injuries relate to an "*alleged unreported [use of force] . . . 5 days ago*." (*Id.* at PAGEID 483) (emphasis added).

It is true, as defendants argue, that there are several-day time lapses between the second and third medical examinations and the date of the alleged use of force—arguably attenuating the

10

connection between the injuries documented in these medical reports and the alleged use of force. Plaintiff avers, however, that he was housed in a segregation cell from October 22 to November 5, 2017 for a prior rules infraction and only left the cell for the October 27 hearing and to go to the medical unit. (Doc. 99 at PAGEID 574; *see also* Pl.'s Ex. 5, Doc. 98-1 at PAGEID 544 (showing that this was the disposition from his prior rules infraction)). This evidence supports plaintiff's argument that he was not in a position to have had any other interpersonal interactions resulting in his injuries during the time period covered by the medical reports. In addition, the second and third medical reports support a finding of injuries consistent with plaintiff's claim of an excessive use or force on October 27, 2017.[5] Together, the Court finds that this evidence creates a genuine issue of material fact as to whether defendants used excessive force against plaintiff on October 27, 2017.

As it relates to the subjective component of his Eighth Amendment claim, as discussed above, plaintiff has proffered evidence creating a genuine issue of material fact as to whether defendants' use of force was motivated by something other than an effort to restore order or maintain discipline. Plaintiff avers that the alleged use of force was preceded by a racial slur and statement suggesting that the use of force by the defendants present in defendant Bear's office was in retaliation for plaintiff's previous assaults on corrections officers. (*See* Doc. 98 at PAGEID 526) ("I see [you] like to assault c/o[]s and we didn't welcome you with an ass whoopin (sic) yet."). This evidence, if true, could lead a reasonable trier of fact to conclude that

---

[5] Given that the Court must construe all facts in the light most favorable to plaintiff, *see Satterfield*, 295 F.3d at 615, the undersigned is not persuaded by defendants' argument that the reference in the third medical report (dated October 31, 2017) to a use of force that occurred "five days ago" does not, as a matter of law, refer to the alleged use of force at issue. (*See* Doc. 87 at PAGEID 466).

11

defendants were motivated by racial bias or vengeance. As it relates to the objective component, plaintiff must allege pain "sufficiently serious" to offend "contemporary standards of decency." *Cordell*, 759 F.3d at 580 (quoting *Williams*, 631 F.3d at 383; *Hudson*, 503 U.S. at 8). Plaintiff's declarations and the second and third medical reports present a genuine issue of material fact on the objective component of plaintiff's Eighth Amendment claim. Given the conflicting evidence in this case, defendants' motion for summary judgment on plaintiff's Eighth Amendment claim should be denied.

### B. Retaliation and Inappropriate Supervision

Defendants also seek summary judgment on plaintiff's "retaliation" and "inappropriate supervision" claims. (Am. Comp., Doc. 62 at PAGEID 367). Defendants' motion for summary judgment on plaintiff's claims for retaliation and inappropriate supervision should be granted.

The elements of a First Amendment retaliation claim are:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)). In response to defendants' motion for summary judgment, plaintiff has failed to come forward with any evidence showing he engaged in protected conduct for purposes of element one or that defendants' alleged actions were in response to plaintiff engaging in protected conduct for purposes of element two. Without any such evidence (let alone allegations), plaintiff also cannot show the required causal connection between the two for purposes of the third element of his retaliation claim. Relatedly, given this failure, defendants are entitled to qualified immunity on this claim because plaintiff has failed to demonstrate the

12

deprivation of a constitutional right. *See Al-Lamadani v. Lang*, 624 F. App'x 405, 409 (6th Cir. 2015) ("First, we must decide whether the facts viewed in the light most favorable to the plaintiff show that the officer has violated the plaintiff's constitutional right.") (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).[6] Defendants' motion for summary judgment should be granted on plaintiff's First Amendment retaliation claim.

Ohio Administrative Code § 5120-9-04 governs appropriate supervision, discrimination, and racial issues within the Ohio Department of Rehabilitation and Correction. It provides:

> As used herein, the term "inappropriate supervision" means any continuous method of annoying or needlessly harassing an inmate or group of inmates, including, but not limited to, abusive language, racial slurs, and the writing of inmate conduct reports strictly as a means of harassment. A single incident may, due to its severity or egregiousness, be considered inappropriate supervision for purposes of this rule.

Ohio Admin. Code § 5120-9-04(B). To the extent that plaintiff alleges inappropriate supervision, plaintiff has not produced evidence of ongoing or continuous harassing behavior. Instead, plaintiff's sworn declaration references a single instance in which defendant Bear used a racial slur. (Doc. 98 at PAGEID 526). Although the use of a single racial slur is reprehensible, plaintiff has nevertheless failed to present evidence that this single incident had the "severity or egregiousness" to constitute inappropriate supervision. Ohio Admin. Code. § 5120-9-04(B). *Cf. King v. Wilkinson*, No. 2:04-CV-116, 2005 WL 3535154 (S.D. Ohio Dec. 23, 2005) (Where only a single allegedly harassing event took place, "the issue is whether Plaintiffs have presented a question of fact as to whether [defendant] issued a conduct report to Plaintiffs for non-existent reasons."). Plaintiff's declaration and argument on his inappropriate supervision claim are simply too threadbare to establish a genuine issue of material fact. A reasonable jury could not return a verdict for plaintiff on the sole basis of this comment, without more. *See Tokmenko v.*

---

[6] Defendants' motion does not raise qualified immunity with respect to plaintiff's Eighth Amendment claim. (*See* Doc. 87 at PAGEID 469-70).

*MetroHealth Sys.*, No. 1:18-cv-2579, 2020 WL 5629093, at *2 (N.D. Ohio Sept. 21, 2020) (citing *Anderson*, 477 U.S. at 250) ("A dispute about a fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."). Defendants' motion for summary judgment should be granted on plaintiff's inappropriate supervision claim.

### IV. Plaintiff's Motion for Summary Judgment

Plaintiff also moves for summary judgment on his Eighth Amendment claim (Doc. 99). For the reasons set forth above, plaintiff's motion should be denied.

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex*, 477 U.S. at 322; *Anderson*, 477 at 247. When the movant is the party with the burden of proof on a claim, the movant must show there is no genuine issue on all essential elements of his claim. *In re Miller*, No. 10-60119, 2010 WL 3463296, at *2 (Bankr. N.D. Ohio Sept. 2, 2010) (citing *Prestige Capital Corp. v. Michigan Gage and Mfg., LLC*, 722 F. Supp.2d 837, 842 (E.D. Mich. 2010) (when the movant bears the ultimate burden of persuasion, the "movant's affidavits and other evidence not only must show the absence of a material fact issue, they also must satisfy that burden"); *Brixey v. Confer (In re Confer)*, 277 B.R. 374, 378 (Bankr. S.D. Ohio 2002)).

As discussed in Part III, plaintiff has identified genuine issues of material fact that preclude summary judgment on his Eighth Amendment claim. Plaintiff has not satisfied his ultimate burden of persuasion. Plaintiff's motion for summary judgment on his Eighth Amendment claim should therefore be denied.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Defendants' motion for summary judgment (Doc. 87) be **DENIED** as to plaintiff's Eighth Amendment claim and **GRANTED** as to plaintiff's First Amendment retaliation and inappropriate supervision claims; and

2. Plaintiff's motion for summary judgment (Doc. 99) be **DENIED**.

Date: 3/26/2021

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| MICHAEL SLOCUM,<br>    Plaintiff, | Case No. 1:18-cv-423<br>Cole, J.<br>Litkovitz, M.J. |
| vs. | |
| SGT. S. BEAR, et al.,<br>    Defendants. | |

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), WITHIN 14 DAYS after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections WITHIN 14 DAYS after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).